SALVATORE ARLIA *vs.* UNITED ELECTRIC RAILWAYS
COMPANY.

MAY 7, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action on the case for negligence to recover damages for personal injuries resulting

from a collision on Charles street, in the city of Providence, shortly after 7 o'clock, p. m., on January 1, 1938, between a snowplow of the defendant and a Ford coupe, driven by one Thomas McKendall, in which the plaintiff was riding as a passenger. The case was tried before a justice of the superior court, sitting with a jury, and resulted in a verdict for the plaintiff for $165. Defendant's motion for a new trial, after hearing, was denied by the trial justice. The defendant urges three exceptions before us: An exception to the decision denying its motion for a new trial; and two exceptions to the refusal of requested instructions at the close of the court's charge. No exception to the charge as given was saved by the defendant.

According to the records of the local weather bureau, it appears in evidence that snow began to fall before midnight of December 31, 1937; that it continued to snow until 9:30 o'clock, a. m., on January 1, 1938, and that rain, "snow moist" and sleet continued falling for the rest of that day and evening. It is also clear that, at the time and place of the accident, the snow was piled in various degrees to the sides of the single street railway track, which was located about in the center of the street, with clearings now and then in front of houses abutting on that street. The street was icy, and traveling was made still more hazardous by frost forming on the windshields of automobiles.

When the accident happened, the snowplow and the automobile, both moving in the middle of the street, approached each other from opposite directions. The testimony for the plaintiff is to the effect that the automobile, in which he was a passenger, was proceeding at a speed estimated by the several witnesses at between twelve to seventeen miles an hour; that there were two lighted candles on the inside of the car next to the windshield to prevent it from frosting over; that the plow, which when first seen was some three hundred feet away, kept coming on towards

the automobile without slackening its speed; and that the driver of the automobile pulled to his right and almost reached a clearing on the side of the track when the left rear of the automobile was struck by the left front of the plow.

The testimony for the defendant, in substance, is that the plow was moving at a speed of four or five miles an hour, with the window in front of the operator open; that the operator first saw the automobile, coming towards the plow at a speed of between fifteen to twenty miles an hour, when it was one hundred and fifty or two hundred feet away; that when the automobile reached a point within about thirty feet of the plow, and the operator of the plow saw that the automobile was not turning off the track, he started to bang the hand gong and stopped the plow when about twenty-five feet from the automobile; that the driver of the automobile pulled to his right and put on the brake when ten or fifteen feet from the plow; and that the icy condition of the street caused the left rear of the automobile to skid into the front left side of the plow.

The defendant's operator testified to the following conversation which he claims to have had with the driver of the automobile after the accident with reference to the condition of the windshield on the automobile. "Q. What did you say to him? A. I told him he couldn't see through it, it was covered with ice. He said he had two candles on it all the way coming down. 'Well', I said, 'you can't see through it *now*.' Q. Did you see any candles around there? A. No, I saw no candles." (italics ours) He also testified that he continued to look at the automobile, as it came towards him, from the time he first saw it, but nowhere in his testimony does he say that the automobile did not have or that he did not see any lighted candles against the windshield of the automobile during that time.

At the end of the charge, the defendant, believing that the instructions of the trial justice to the jury, as given, were not sufficiently definite, requested certain instructions, which were refused and are now the subject of two of its exceptions. The first request to charge practically asks the court to direct the jury to return a verdict for the defendant on the ground of the plaintiff's contributory negligence, in that he failed to take proper precaution for his own safety by not warning the driver that he was driving "with a windshield through which he cannot see." This request was properly refused. Both the driver of the automobile and the plaintiff testified that they could see through the windshield because of the lighted candles, which kept it from being covered with frost; and the conversation that the operator of the plow claims to have had with the driver of the automobile concerned the condition of the windshield *after* the accident and not while the automobile was being driven before the accident.

The defendant was not prejudiced by the denial of its second request, which refers in general terms to the time when an operator is bound to bring a "trolley car" to an actual stop. In the instant case the defendant's operator testified that he did stop the plow as soon as he realized that the automobile was not going to get off the track, while the testimony for the plaintiff was that the plow did not stop until after it had struck the automobile. The question thus raised was really one of credibility, which the trial justice submitted to the jury in the following language: "Was this plow stopped at the time of the collision and did this automobile run into a stopped object, or did the plow run into the automobile?" The charge of the court as given, to which the defendant saved no exception, fairly left it to the jury to determine whether, in the unusual conditions in evidence, the defendant's operator acted "as

a reasonably prudent person would have acted under the circumstances."

The defendant contends that the trial justice erred in denying its motion for a new trial, especially as he stated that if the case had been tried without a jury he "would have preferred to believe the testimony of Joseph Leddy, the operator of the snow plow, as against all the other testimony in the case." However, in a rather discursive decision from the bench, the trial justice later pointed out that the case having been tried before a jury and there being "much conflicting evidence", the jury "were justified in finding for the plaintiff Arlia", if they believed the testimony for the plaintiff. He therefore denied the defendant's motion for a new trial.

A fair reading of the decision as a whole shows that the trial justice rested his decision on our well-established rule that when the evidence is such that different minds may reasonably and fairly come to different conclusions therefrom, the trial justice should not disturb a verdict of the jury, even though his personal judgment might incline him to a different conclusion. *Anderson* v. *Johnson*, 59 R. I. 241. The credibility of clearly conflicting evidence brings the instant case within the purview of this rule. The decision of the trial justice is without error.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Frank C. Cambio, Gerald L. Bronstein*, for plaintiff.

*Clifford Whipple, Frank J. McGee*, for defendant.